## · UNITED STATES CIRCUIT COURT.

NELSON G. NETTLETON and others agt. THE SHIP FANNY FOSDICK.

An article of merchandise (kerosene or coal oil), which is partially new as a commodity in the trade, and its effect upon other cargo, stowed in the same hold of a vessel, not well understood, *held*, that there cannot be applied to it such a clear and well known usage and custom, in respect to its *stowage* with other cargo, as will exempt the carrier within the principle of the case of *Baxter* agt. *Lelland* (1 *Blatch.* 536).

But where it was alleged that a quantity of wheat had been damaged by the stowage of kerosene oil, in the presence of the wheat in the hold of the vessel, by which the wheat was impregnated with an offensive odor, so as to lessen its value 25 cents per bushel, and as to which there was a contrariety of evidence,

*Held*, that this wheat, on the discharge of the vessel, having been by the consignees mingled and blended with another portion of wheat, which was stowed between decks, and as to which there was no satisfactory evidence that it was affected by the disagreeable flavor of the oil, the libel against the vessel was properly dismissed.

*New - York, October,* 1859.

APPEAL from a decree dismissing libel.

NELSON, C. J.    The libel was filed against the ship, to recover damages for the injury to a quantity of wheat shipped from New-Orleans to this port.    The wheat (990 sacks, containing 2,306 bushels) was but on board the vessel in December, 1857, and arrived here January 10th, following.    The Fanny Fosdick was a general ship, engaged in carrying general cargo, and had laden on board, with the wheat, flour, sugar, molasses, hides, oil, &c.    When the wheat was discharged at this port, it is claimed that it emitted an offensive smell as if impregnated with the odor of kerosene or Breckenridge coal oil, of which some 750 barrels had been stowed in the hold of the ship.    Two hundred bags of the wheat were stowed in the hold on barrels of flour, which rested on a ground tier of hogsheads of molasses.    The wheat, however, was not within 20

feet of the oil. The rest of the wheat was stowed between decks. The cargo was well stowed and properly cared for during the voyage, unless the stowage of the oil in the presence of the wheat affords evidence of bad and unskillful stowage and want of due care and caution in the transportation. The wheat, when discharged, in all other respects, except the offensive odor, was in fine condition. This smell, the witnesses state, reduced its value some 25 cents per bushel. The case upon the facts is peculiar.

There is considerable conflict of evidence upon the questions: 1, whether or not there was any stench or offensive odor emitted from the wheat when delivered? 2, whether, if in exposing it to the air a short time with proper ventilation, it would not have been removed? and 3, it is claimed to have been ascertained from actual shipments with assorted cargoes, that coal oil would not produce the effect sought to be established in this case. The solution, doubtless, of this contrariety of evidence may in part be found in the fact that the article of coal oil is partially new as a commodity in the trade, and its effects upon other cargo, stowed in the same hold of the vessel, not yet well understood. For this reason, we are not prepared to say that there can have been such a clear and well-known usage and custom, in respect to its stowage with other cargo, as will exempt the carrier within the principle of the case of *Baxter* agt. *Lelland* (1 *Blatch.* 536).

But there is another ground resting upon the facts in the case, upon which we think the libel was properly dismissed by the court below. The wheat was delivered from the ship in the sacks in lighters, and was discharged from them into the lighters, in bulk, mingling the portion stowed in the hold, which was in the vicinity of the oil, with the portion stowed between decks. The consignees are responsible for this blending the parcels, and we are not at all satisfied upon the evidence that the portion stowed between decks was affected by the disagreeable flavor of the oil, even if it had been otherwise in the portion stowed in the hold. And as it respects the 200 bags in the hold, in the conflict of the testimony we are not

disposed to interfere with the decree. Indeed, we are inclined to think that, if some care had been bestowed in airing and ventilating the wheat, the offensive odor would have disappeared, and the damages slight, if any. A sample was brought into the court below, which the judge states, in his opinion, " clearly failed to show that it retained any discernible effects of the taint."

The decree of the court, dismissing the libel, affirmed.